FILED
06-21-2024
Clerk of Circuit Court
Kenosha County
2024CV000644
Honorable Frank Gagliardi
Branch 3

**STATE OF WISCONSIN**　　**CIRCUIT COURT**　　KENOSHA
　　　　　　　　　　　　　　**CIVIL DIVISION**

| | |
|---|---|
| ROMAN HAACK,<br>7817 37th Avenue<br>Kenosha, WI 53142, | **SUMMONS** |
| | Case No.: _____ |
| and | Classification Code: 30301 |
| BARBARA REEVES,<br>7817 37th Avenue<br>Kenosha, WI 53142, | **Jury Trial Demanded** |
| Plaintiffs, | Amount claimed is greater than the<br>amount under Wis. Stat. § 799.01(1)(d). |
| v. | |
| CARMAX AUTO SUPERSTORES INC.,<br>12800 Tuckahoe Creek Parkway<br>Richmond, VA 23238, | |
| Defendant. | |

DANE COUNTY LEGAL NOTICE
SERVED BY: _K. N. Sanchez_
ON _7/2/24_ / AT _10:10_ P M

---

THE STATE OF WISCONSIN, To each person named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons, you must respond with a written Answer, as that term is defined in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an Answer that does not follow the requirements of the Statutes. The Answer must be sent or delivered to the Court, whose address is: Kenosha County Courthouse, 912 56th Street, Kenosha, WI 53140, and to Plaintiff's attorney, whose address is Ademi LLP, 3620 East Layton Avenue, Cudahy, Wisconsin 53110. You may have an attorney help or represent you.

**Exhibit A**

If you do not provide an answer within forty-five (45) days, the Court may grant Judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A Judgment may be enforced as provided by law. A Judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated:  June 21, 2024                    ADEMI LLP

                                By: *Electronically signed by John D. Blythin*
                                    John D. Blythin (SBN 1046105)
                                    *Attorney for Plaintiff*

Mailing address:
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Phone No.: 414-482-8000

FILED
06-21-2024
Clerk of Circuit Court
Kenosha County
2024CV000644
Honorable Frank Gagliardi
Branch 3

STATE OF WISCONSIN     CIRCUIT COURT     KENOSHA COUNTY

CIVIL DIVISION

---

ROMAN HAACK and BARBARA REEVES,

                     Plaintiffs,

            v.

CARMAX AUTO SUPERSTORES INC.,

                     Defendant.

**COMPLAINT**

Case No. _____
Classification Code: 30301

**Jury Trial Demanded**

---

COME NOW Plaintiffs Roman Haack and Barbara Reeves, by Plaintiffs' Attorneys, Ademi LLP, and for a cause of action, states as follows:

## INTRODUCTION

1.      This class action seeks redress for unfair consumer practices that violate the Wisconsin False Advertising Law, Wis, Stat. § 100.18, the Uniform Commercial Code, the Wisconsin Criminal Code, the Motor Vehicle Dealership Law, Wis. Stat. § 218.0163(2), and common law.

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to Wis. Stat. § 801.05(3). Defendant's activities were directed at Wisconsin residents in Wisconsin. Venue in Kenosha County is proper because the claim arose there. Wis. Stat. § 801.50.

## PARTIES

3.      Plaintiff Roman Haack is an individual who resides in Kenosha County.

4.      Plaintiff Barbara Reeves is an individual who resides in Kenosha County.

5.      Each Plaintiff is a "retail buyer" as used in the Wisconsin Motor Vehicle Dealership Law, Wis. Stat. § 218.0101 and "customer" as used in the WCA, Wis. Stat. § 421.301.

6.     Defendant CarMax Auto Superstores, Inc. ("CarMax") is a foreign corporation with its primary place of business located at 12800 Tuckahoe Creek Parkway, Richmond, VA 23238.

7.     CarMax does substantial business in Wisconsin. It is an automobile dealership that sells used automobiles to the public, and is licensed by the Wisconsin Department of Financial Institutions as a Motor Vehicle Dealer. *See* https://www.carmax.com/.

8.     Plaintiffs bought their car at the CarMax dealership located at 8200 120th Avenue, Kenosha, WI 53142.

## FACTS

9.     On or around March 11, 2022, Plaintiffs signed a contract with CarMax for the purchase of a used 2016 Chevrolet Silverado 1500 (the "Vehicle").

10.     The total price of the Vehicle was $33,998, plus certain additional charges, with Plaintiffs agreeing to pay $10,000 down. A copy of the retail installment contract is attached to this Complaint as Exhibit A.

11.     At the time of purchase, CarMax provided Plaintiffs with an Experian AutoCheck Vehicle History Report ("Experian Report"). The Experian Report is attached to this Complaint as Exhibit B.

12.     Experian is a multinational data analytics and consumer reporting company and one of the "Big Three" consumer reporting agencies, collecting and aggregating information on hundreds of millions and people and businesses in the United States alone.

13.     One of the services Experian provides its clients is through its "AutoCheck" business, pursuant to which Experian sells Vehicle History Reports.

14.     The Experian Report states that no accident was reported on the vehicle.

15.     The Experian Report states that no air bags had been deployed on the vehicle.

4

16.     The Experian Report states that no other damage was reported.

17.     Each of the above representations in the Experian Report was false.

18.     Upon information and belief, CarMax's employees knew that the Vehicle had been in an accident involving airbag deployment, notwithstanding the Experian Report, before Plaintiffs purchased the Vehicle.

19.     Plaintiff Haack recently went to another dealership in order to purchase a new vehicle, with an intention to use the Vehicle as a trade-in.

20.     Plaintiff Haack provided the Vehicle's VIN to the sales representative, who obtained a CarFax report on the Vehicle. CarFax, Inc. provides vehicle history reports to consumers and vehicle dealers.

21.     After viewing the CarFax report, the sales representative informed Plaintiff that the dealership would not accept the Vehicle as a trade-in because it had been involved in an accident that resulted in airbag deployment.

22.     As a result, Plaintiffs purchased the CarFax report. The CarFax report is attached to this Complaint as Exhibit C.

23.     The CarFax report reports on a vehicle with VIN number 1GCVKREC3GZ424849. The VIN corresponds to Plaintiff's vehicle.

24.     The CarFax report states that there was "moderate damage" to the "front" and "left front" of the Vehicle reported on or about December 3, 2019.

25.     The CarFax report further states that there was airbag deployment reported on or about December 3, 2019.

26.     The National Highway Transportation and Safety Administration ("NHTSA") website explains that airbags typically only deploy in "moderate to severe" accidents, and thus do

5

not deploy unless the crash is functionally equivalent to hitting a solid, fixed barrier at 8 to 14 miles per hour or higher, or striking a parked car of similar size at 16 to 28 miles per hour or more. https://www.nhtsa.gov/equipment/air-bags#the-topic-faqs.

27.     Thus, airbag deployment along with an accident is, in and of itself, evidence of possible structural damage and repair.

28.     Although the CarFax report states that there were "no issues reported" respecting "Structural Damage," the CarFax report also indicates that the fact that "no issues reported" does not mean that there was no structural damage, and that "CARFAX recommends that you have this vehicle inspected by a collision repair specialist."

29.     After being told that the CarFax report indicated that there was an accident that had resulted in airbag deployment and thus likely occurred at 30 miles per hour or more and may have caused structural damage, Plaintiff Haack called CarMax to advise them of the problem and request a remedy.

30.     He spoke with a CarMax manager, who acknowledged that CarMax likely should have disclosed the problem but claimed that Plaintiff Haack was also at fault because certain parts of the Vehicle were marked with yellow paint, indicating that they had been replaced with parts from a junkyard.

31.     The CarMax manager advised Plaintiff Haack that CarMax does not use CarFax because it is "too expensive" and instead uses Experian AutoCheck.

32.     The CarMax manager indicated that CarMax was willing to take 50% fault, suggesting that one possible solution was for Plaintiffs to use the Vehicle as a trade-in in connection with the purchase of a new vehicle at CarMax instead of another dealership, and suggested that Plaintiffs have the Vehicle appraised for its trade-in value.

6

33.     When Plaintiff Haack asked what information would be considered in a trade-in, the CarMax manager responded that the appraisal would be based on the information available at the time, *i.e.,* including the accident information associated with the Vehicle.

34.     Plaintiffs received several text messages from another CarMax representative, who proposed that Plaintiffs purchase certain vehicles from CarMax. However, none of these vehicles was an actual replacement. For example, one of the vehicles suggested had a 4-cylinder motor, whereas Plaintiffs were interested in a V8, like the Vehicle itself has.

35.     As of the filing of this complaint, Plaintiff has been unable to drive the vehicle. The registration expired in March 2024 and the On-Board Diagnostic ("OBD") system is returning over 90 independent codes, each of which causes the "check engine" light to illuminate and further would cause the vehicle to fail the emissions inspection necessary to renew the registration.

36.     Upon information and belief, the OBD codes are a result of the undisclosed accident and the replacement of damaged parts with junkyard parts.

37.     Plaintiff obtained an estimate of at least $2,800 to fix the problems causing the OBD system to illuminate the check engine light, with no guarantee that that service would actually resolve the OBD codes.

38.     Moreover, Plaintiffs are still paying the balance of the loan on the vehicle to protect their credit.

39.     Upon information and belief, Defendant knew the accident information in the Experian AutoCheck report was false at the time Defendant sold the Vehicle to Plaintiffs.

40.     Defendant was responsible for finding and disclosing information regarding any evidence of repair to structural portions of the Vehicle such as the frame or unibody:

7

> USED MOTOR VEHICLE GENERAL CONDITION DISCLOSURE.
> Dealer and salespersons shall inform prospective retail purchasers of used
> motor vehicles in writing before purchase contract execution, in the manner
> and on the form prescribed in sub. (6). This disclosure shall include all
> significant existing mechanical, electrical and electronic defects and
> damage and evidence of repair to strut tower, trunk floor pan, frame or
> structural portion of unibody, including corrective welds. Disclosure of
> information shall be that which the licensee can find using reasonable care.

Wis. Admin. Code § Trans. 139.04(4).

41.     Further, where a licensed dealership sells a vehicle without identifying and

disclosing the existence of any reasonably discoverable evidence of possible structural damage or

repair, the dealership must "remedy" any item improperly reported in the inspection disclosures:

> Unless otherwise agreed to in the purchase contract, the inspection
> disclosures shall neither create any warranties, express or implied, nor affect
> warranty coverage provided for in the purchase contract. However, it is an
> unfair practice for a dealer to not remedy an item improperly reported on
> the guide that the dealer could have found using reasonable care if the buyer
> has notified the dealer within a reasonable time after the buyer discovered
> or should have discovered the improperly reported item and the vehicle is
> made available to the dealership. The dealer shall reasonably remedy or
> make a good faith effort to reasonably remedy an item improperly reported
> within 30 days of the buyer's notification.

Wis. Admin. Code § Trans. 139.04(6)(a)5.

42.     Although the CarMax representative claimed that the CarFax reports were "too

expensive" for CarMax to obtain prior to selling the Vehicle, CarMax advertised and sold the

Vehicle at a sale price of almost $35,000, plus additional charges.

43.     CarFax advertises the ability for consumers to purchase six reports at once for

$99.99.

44.     Any retail purchaser would reasonably assume that a licensed motor vehicle

dealership would have access to all of the material information about the Vehicle's history in the

CarFax report.

8

45. Moreover, Defendant's own employee asserted that *Plaintiff Haack* – who, unlike Defendant, is not in the business of buying and selling used vehicles – should have inferred that an accident must have occurred at high speed.

46. The Wisconsin Department of Transportation Right Way Manual ("Right Way Manual") states dealers must take "reasonable care" to disclose information about a vehicle that is placed for sale. *See* https://wisconsindot.gov/Documents/dmv/shared/right-way-manual.pdf.

47. The Right Way Manual indicates that "[u]sing reasonable care may mean inspecting more thoroughly than regulations require when routine inspection reveals anything suspicious." (Right Way Manual at 27)

48. The Right Way Manual also indicates that motor vehicle dealers are required to disclose any "material history" about a vehicle, including any information that:

      (i)     would be important to any reasonable person;

      (ii)    affects the value of the vehicle;

      (iii)   the buyer asks about; or

      (iv)   the dealership knows or has reason to know would be important to the buyer.

*Id.*

49. The Right Way Manual further explains that this material history information should be disclosed on the Wisconsin Buyers Guide in the same area where you explain any condition issues (any "no" and "not legal" items)" and that if a dealer is "unsure whether history information would be material to a buyer, it is best to disclose it and avoid problems later." *Id.*

50. The fact that the Vehicle had been in an accident at a sufficiently high speed for airbag deployment is part of the material history of the Vehicle because that information greatly

9

affects, among other things, the safety and resale value for the Vehicle, and would be important to any reasonable person. That is why the AutoCheck Report and CarFax Report are supposed to include information about accident and airbag deployment history.

51.    As noted above, the CarMax representative even suggested to Plaintiff Haack that *he* should have identified the Vehicle as potentially having been in a serious accident in light of the yellow paint markings on certain replacement parts.

52.    CarMax negligently, recklessly, or intentionally failed to meet its duty to exercise reasonable care in attempting to identify and disclose evidence of possible structural damage or repair and material history of the vehicle, such as the airbag deployment.

53.    CarMax owes a duty to consumers, including Plaintiffs, to exercise reasonable and due care when making representations about a vehicle's accident and airbag deployment history.

54.    CarMax breached the duties it owes to consumers, including Plaintiffs, as they negligently, carelessly, and recklessly misrepresented information about vehicle accident and airbag deployment history.

55.    The negligence, carelessness, and/or recklessness of CarMax includes but is not limited to:

a.    Failing to properly investigate the history of the vehicles sold, including the vehicle sold to Plaintiffs in this case;

b.    Failing to accurately research whether accidents have been reported and whether airbags have been deployed;

c.    Failing to include all reasonably reliable sources of information on vehicle accident and airbag deployment history, including the source(s) of

10

information that CarFax used in this case to identify the accident and airbag

deployment reports that occurred on or about December 3, 2019;

d.     Failing to provide accurate information as to the actual accident and airbag

deployment history with respect to the Vehicle;

e.     Failing to accurately represent and/or investigate whether the accident and

airbag deployment history that they are reporting is correct; and/or

f.     Failing to use the appropriate degree of care, skill, foresight, and ability

required under the circumstances and/or by the law of the State of

Wisconsin and/or the United States of America.

56.     At all times relevant to this Action, CarMax was aware, and continues to be aware,

that the Experian AutoCheck Vehicle History Reports are not compiled using all information

reasonably available, and are thus unconscionably and materially false, deceptive, misleading, and

incomplete.

57.     The false information in the Experian Report was material to Plaintiffs, who

believed and reasonably relied on the information in the Experian Report in agreeing to purchase

the Vehicle, and would not have purchased the Vehicle if the Experian Report had indicated that

there was an accident.

58.     Plaintiffs want to trade in the vehicle now, but cannot do so because of the fact that

the airbags were deployed and no one is willing to purchase the vehicle in such a state.

59.     If Plaintiffs were to sell to private party, they would have to disclose the damage

and airbag deployment issues to any potential buyer.

11

60.     Plaintiffs were provided with an "Explanation of Personal Obligation" by CarMax

which specifically states that the transaction is a "consumer credit transaction" multiple times. The

Explanation of Personal Obligation is attached to this Complaint as Exhibit D.

## FIRST CAUSE OF ACTION
### Wisconsin False Advertising ("FAL") Pursuant to
### Wis. Stat. § 100.18

61.     Plaintiffs incorporate by reference as if fully set forth herein the allegations

contained in the preceding paragraphs of this Complaint.

62.     Wis. Stat. § 100.18(1) states:

> No person, firm, corporation or association, or agent or employee
> thereof, with intent to sell, distribute, increase the consumption of
> or in any wise dispose of any real estate, merchandise, securities,
> employment, service, or anything offered by such person, firm,
> corporation or association, or agent or employee thereof, directly or
> indirectly, to the public for sale, hire, use or other distribution, or
> with intent to induce the public in any manner to enter into any
> contract or obligation relating to the purchase, sale, hire, use or lease
> of any real estate, merchandise, securities, employment or service,
> shall make, publish, disseminate, circulate, or place before the
> public, or cause, directly or indirectly, to be made, published,
> disseminated, circulated, or placed before the public, in this state, in
> a newspaper, magazine or other publication, or in the form of a book,
> notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard,
> card, label, or over any radio or television station, or in any other
> way similar or dissimilar to the foregoing, an advertisement,
> announcement, statement or representation of any kind to the public
> relating to such purchase, sale, hire, use or lease of such real estate,
> merchandise, securities, service or employment or to the terms or
> conditions thereof, which advertisement, announcement, statement
> or representation contains any assertion, representation or statement
> of fact which is untrue, deceptive or misleading.

63.     Plaintiffs are "the public" pursuant to the above statute in that they were prospective

purchasers of the Vehicle when the false representations complained of occurred. See *Chris*

*Hinrichs & Autovation Ltd. v. Dow Chem. Co.*, 2020 WI 2, ¶60, 389 Wis. 2d 669, 698, 937 N.W.2d

37, 51 ("In its analysis, the *Automatic Merchandisers* court examined "whether or not Sec. 100.18(1), Stats. applies to oral representations made in private conversations to prospective purchasers of the defendants' products." *Id.* at 662. The court determined that the statute applies in such a situation: 'While the representations were made privately to prospective purchasers their only relationship to the defendants was that they had responded to advertisements in the classified sections of newspapers. These persons were members of 'the public' as that term is used in this statute.'").

64.     As alleged herein, Defendant falsely advertised the Vehicle by falsely representing that it had not been in an accident and the airbags had not deployed, when in fact the Vehicle had been in an accident and the airbags had deployed.

65.     Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Vehicle in a manner that is untrue and misleading, which Defendant knew or reasonably should have known.

66.     Defendant profited from its sale of the falsely and deceptively advertised Vehicle to the unwary consumers.

67.     Pursuant to Wis. Stat. § 100.18, Plaintiffs seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**SECOND CAUSE OF ACTION**
**Theft by Fraud Pursuant to Wis. Stat. § 943.20(1)(d)**
**and Wis. Stat. § 895.446.**

68.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

13

69.    Defendant obtained title to Plaintiffs' money by intentionally representing that the Vehicle was, in fact, not in an accident and the airbags had not deployed, which CarMax knew at the time was not true.

70.    "Obtaining title to property includes obtaining money." *Berard v. Schertz*, 2008 WI App 121, 313 Wis. 2d 523, 756 N.W.2d 478.

71.    CarMax's purpose in making false representations that the Vehicle was in good condition and had not been in an accident and the airbags had not deployed was to charge a premium for the Vehicle.

72.    Plaintiffs believed the Vehicle was in good condition, had not been in an accident, that the airbags had not deployed, and, consequently, paid a premium price for it to CarMax.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**Pursuant to the UCC**

73.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74.    Defendant affirmed the fact that the Vehicle had not been in an accident and that the airbags had not been deployed through a written certification that became part of the basis of the bargain.

75.    The Vehicle had been in an accident and the airbags had been deployed.

76.    The Vehicle does not conform to the affirmation provided by CarMax in its written certification of the Vehicle.

77.    The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiffs because they concerned alleged valuation of the Vehicle

14

78.     These representations had an influence on Plaintiffs' decisions in purchasing the Vehicle.

79.     Defendant made the above representations to induce Plaintiffs to purchase the Vehicle. Plaintiffs relied on the representations when purchasing Defendant's Vehicle.

80.     Defendant breached the express warranties by selling a Vehicle that that did not conform to the express warranties.

81.     That breach actually and proximately caused injury in the form of the price premium that Plaintiffs paid for the Vehicle.

82.     Defendant violated Wis. Stat. § 402.313(1).

### FOURTH CAUSE OF ACTION
### UCC Fraud

83.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84.     Defendant had a duty to not misrepresent information to Plaintiffs as to the quality and characteristics of the Vehicle because Defendant was in a superior position than Plaintiffs such that reliance by Plaintiffs was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

85.     Instead, Defendant intentionally misrepresented to Plaintiffs material facts regarding the quality and characteristics of the Vehicle, including that the Vehicle had not been in an accident and that the airbags had not been deployed. These representations were material and were uniformly made.

15

86.    As noted in detail above, these representations were false and misleading, as the Vehicle was not for sale as described. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

87.    Defendant made such false and misleading statements with the intent to induce Plaintiffs to purchase the Vehicle at a premium price, deprive Plaintiffs of property or otherwise causing injury, and thus, Defendant has committed fraud.

88.    Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers would place trust and confidence in the claims regarding the Vehicle made by the salespeople, and rely thereon in their purchase of the Vehicle. Defendant expressly represented that the Vehicle had not been in an accident and that the airbags had not been deployed, and generated great profit by instilling confidence in its consumer base that its claims were credible.

89.    Plaintiffs were unaware of the falsity in Defendant's misrepresentations and, as a result, justifiably relied on them when making the decision to purchase the Vehicle.

90.    As a proximate result of Defendant's intentional misrepresentations, Plaintiffs were induced to purchase the Vehicle.

91.    Plaintiffs would not have purchased the Vehicle or paid as much for the Vehicle if the true facts had been known.

92.    As a result of their reliance, Plaintiffs were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

16

93.    Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

94.    Defendant violated Wis. Stat. § 402.721.

**FIFTH CAUSE OF ACTION**
**Statutory Fraud and Unfair Trade Practices**
**Pursuant to Wis. Stat. §§ 218.0116 and 218.0163(2)**

95.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96.    Defendant represented to Plaintiffs that the Vehicle was for sale and that it had not been in an accident and the air bags had not been deployed.

97.    The representation that the Vehicle had not been in an accident and that the airbags had not been deployed was untrue.

98.    Defendant knew that the Vehicle had been in an accident and that the airbags had been deployed when it made the above representations.

99.    Defendant made the above false representations to induce Plaintiffs to purchase the Vehicle at a premium price, causing Plaintiff a pecuniary loss.

100.    Plaintiffs believed they were getting a vehicle in good condition and paid the price for it.

101.    Plaintiffs' reliance on Defendant to sell them a vehicle that had not been in an accident and in which the airbags had not been deployed was justified because Defendant was in a superior position, possessing the skills and expertise in automobile sales, loans, and certifications, such that Plaintiffs believed Defendant's representations regarding the Vehicle.

17

102.    Plaintiffs relied on Defendant's false representations, signed the paperwork, and paid for the Vehicle, to their detriment.

103.    Defendant failed to remedy an item improperly reported at the time the Vehicle was sold to Plaintiffs.

104.    "Any retail buyer, lessee or prospective lessee suffering pecuniary loss because of a violation by a licensee of s. 218.0116 (1) (bm), (c), (cm), (dm), (e), (em), (f), (im), (m) or (p) may recover damages for the loss in any court of competent jurisdiction together with costs, including reasonable attorney fees." Wis. Stat. § 218.0163(2).

105.    Defendant violated, Wis. Stat. § 218.0116(c) "[w]illfully defrauding any retail buyer, lessee or prospective lessee to the buyer's, lessee's or prospective lessee's damage."

106.    Defendant violated Wis. Stat. § 218.0116(dm), "[h]aving made a fraudulent sale, consumer lease, prelease agreement, transaction or repossession."

## SIXTH CAUSE OF ACTION
### Unconscionability
### Pursuant to Wis. Stat. §§ 218.0163(2) and 218.0116(f)

107.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108.    Defendant represented that the Vehicle had not been in an accident and the airbags had not been deployed when, in fact, those representations were not true.

109.    Defendant took Plaintiff's premium payment for the Vehicle and failed to deliver a vehicle in the condition that their certifications promised.

110.    Defendant essentially took Plaintiffs' money and never had any intention of selling the vehicle they represented to Plaintiffs.

18

111.    "Any retail buyer, lessee or prospective lessee suffering pecuniary loss because of a violation by a licensee of s. 218.0116 (1) (bm), (c), (cm), (dm), (e), (em), (f), (im), (m) or (p) may recover damages for the loss in any court of competent jurisdiction together with costs, including reasonable attorney fees." Wis. Stat. § 218.0163(2).

112.    Defendant violated Wis. Stat. § 218.0116(f), "[h]aving engaged in any unconscionable practice relating to the licensed business activity."

**SEVENTH AND EIGHTH CAUSE OF ACTION**
**Good Faith and Fair Dealing**
**Pursuant to the Wisconsin Consumer Act**
**and the Motor Vehicle Dealership law**

113.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

114.    The Wisconsin Consumer Act requires: "Every agreement or duty within chs. 421 to 427 imposes an obligation of good faith in its performance or enforcement. 'Good faith' means honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing." Wis. Stat. § 421.108.

115.    Section 426.109 of the WCA allows customers to bring civil actions to restrain merchants and/or persons acting on behalf of merchants from engaging in false, misleading, deceptive, or unconscionable conduct in consumer credit transactions, and further provides that the existence of an adequate remedy at law is not a defense to claims for injunctive relief.

116.    Defendant took Plaintiffs' money in exchange for a Vehicle that they knew was not in the state that their condition report stated it was. The Vehicle, in fact, had been in an accident and the airbags had been deployed.

117.    Taking a customer's money for a vehicle that is not certified is not honest or fair.

19

118.    Defendant did not act in good faith.

119.    "Any retail buyer, lessee or prospective lessee suffering pecuniary loss because of a violation by a licensee of s. 218.0116 (1) (bm), (c), (cm), (dm), (e), (em), (f), (im), (m) or (p) may recover damages for the loss in any court of competent jurisdiction together with costs, including reasonable attorney fees." Wis. Stat. § 218.0163(2).

120.    CarMax engaged in false and deceptive conduct in consumer credit transactions, violating Wis. Stat. §§ 421.108.

121.    CarMax violated Wis. Stat. § 218.0116(m), "[h]aving violated chs. 421 to 427 or 429."

### NINTH CAUSE OF ACTION
### Quasi-Contract/ Unjust Enrichment

122.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

123.    As alleged in detail above, Defendant's false and misleading representations caused Plaintiffs to purchase a vehicle that did not conform to the certifications provided by CarMax and Experian.

124.    In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

125.    It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. For example, Defendant was only able to charge a premium price for the Vehicle by misrepresenting information to Plaintiffs, or otherwise misrepresenting the its qualities, namely the fact that it had not been in an accident and the airbags had not been deployed.

126.    Plaintiff and the Class seek restitution.

20

## TENTH CAUSE OF ACTION
### Negligence / Recklessness

127.   Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

128.   CarMax negligently or recklessly failed to act in a reasonable manner with respect to Plaintiffs and other consumers.

129.   As a proximate cause of Defendant's negligence and recklessness, Plaintiffs and other consumers have sustained damages and other harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendant for:

(a)   actual damages;

(b)   statutory damages;

(c)   punitive damages;

(d)   injunctive relief;

(e)   attorneys' fees, litigation expenses and costs of suit; and

(f)   such other or further relief as the Court deems proper.

Dated:  June 21, 2024

**ADEMI LLP**

By:   *Electronically signed by John D. Blythin*
      John D. Blythin (SBN 1046105)
      Jesse Fruchter (SBN 1097673)
      Ben J. Slatky (SBN 1106892)
      Daut Ademi (SBN 1122701)
      3620 East Layton Avenue
      Cudahy, WI 53110
      (414) 482-8000

21

(414) 482-8001 (fax)
jblythin@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com
dademi@ademilaw.com

22

# EXHIBIT A

# CARMAX®

## RETAIL INSTALLMENT CONTRACT

### Consumer Credit Sale

Contract Number  24315470
Contract Date  03/11/2022

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable for us for any amount due under this Contract.

| | Name: | Address | Zip Code |
|---|---|---|---|
| Seller | CarMax Auto Superstores, Inc. | 8200 120th AVENUE | KENOSHA, WI 53142 |
| Buyer | ROMAN J HAACK | 7817 37TH AVE | KENOSHA, WI 53142 |
| | Name: | Address | Zip Code |
| Co-Buyer | BARBARA JEAN REEVES | 7817 37TH AVE | KENOSHA, WI 53142 |
| | Name: | Address | Zip Code |

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 10,000.00 |
|---|---|---|---|---|
| 5.95 % | $ 3,660.63 e* | $ 28,381.29 | $ 32,041.92 e* | $ 42,041.92 e* |

| Your Payment Schedule will be: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments are Due |
| 48 | $ 667.54 | Monthly, beginning  04/25/2022 |

*e means an estimate

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge that is the lesser of $10.00 or 5% of the unpaid balance of the installment.

**Prepayment.** If you pay amounts owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about prepayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term  N/A  (in months)

I want the optional GAP contract:

Buyer Signs:  N/A

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model  2016 CHEVROLET SILVERADO 1
VIN  1GCVKREC3GZ424849
New _____ Used  X

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household  ✗
Business or Commercial _____  Agriculture _____

As part of this transaction, you sold the following Vehicle(s) to Seller as a "Trade-In:

Year/Make/Model  N/A
VIN  N/A

Year/Make/Model  N/A
VIN  N/A

#### YOUR PROMISE TO PAY

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

---

### ITEMIZATION OF AMOUNT FINANCED

| | | | | |
|---|---|---|---|---|
| A. | CASH PRICE | | | |
| 1. | Cash Price of Vehicle | | $ | 33,999.00 |
| 2. | Cash Price of CarMax Accessories | | $ | 0.00 |
| 3. | Service Fee* | | $ | 99.00 |
| 4. | Sales / Excise Tax* | | $ | 1,985.29 |
| 5. | Electronic Filing Fee* | | $ | 18.50 |
| 6. | Other: N/A | | $ | 0.00 |
| 7. | Total Cash Price [1 through 6] | | $ | 36,101.79 |
| B. | DOWNPAYMENT | | | |
| 1. | Cash Downpayment | | $ | 10,000.00 |
| 2. | Manufacturer's Rebate | | $ | 0.00 |
| 3. | Net Value of "Trade-In" Sold to CarMax | | | |
| | a. Value of "Trade-In" | $ | 0.00 | |
| | b. Proceeds from "Trade-In" Retained by Buyer | $ | 0.00 | |
| | c. Pay-Off of "Trade-In" | $ | 0.00 | |
| | d. Net Value of "Trade-In" [a minus b minus c, if negative, enter "0" and see line D.4. below] | | $ | 0.00 |
| 4. | Other: N/A | | $ | 0.00 |
| | Total Downpayment [1 through 4] | | $ | 10,000.00 |
| C. | UNPAID BALANCE OF CASH PRICE [A minus B] | | $ | 26,101.79 |
| D. | OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF | | | |
| 1. | Optional GAP Waiver Agreement | | $ | 0.00 |
| 2. | To Public Officials | | | |
| | a. WI Title Fees | | $ | 164.50 |
| | b. Vehicle License Fee | | $ | 105.00 |
| | c. N/A | | $ | 0.00 |
| | d. WI Lien Fee | | $ | 10.00 |
| | e. N/A | | $ | 0.00 |
| | f. N/A | | $ | 0.00 |
| | g. N/A | | $ | 0.00 |
| 3. | To  Automotive Warranty Services of Florida, Inc.  for Optional Extended Service Contract | | $ | 1,999.00 |
| 4. | To  N/A  for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(c) minus B(3)(a)] | | $ | 0.00 |
| 5. | Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 4] | | $ | 2,279.50 |
| E. | AMOUNT FINANCED [C plus D] | | $ | 28,381.29 |

*Seller may retain a portion of this amount.

*A service fee is not required by law, but may be charged to motor vehicle purchasers or lessees for services related to compliance with state and federal laws, verifications, and public safety, and must be reasonable.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials  _____     Co-Buyer's Initials  _____

RIC9049
Order #: 1371937
Rev. Date 05/20

03/11/2022 02:25 PM
DMS Tracking #: 4043977     Reprint #: 0



MISID: 50000050
Legal - GF

Case 2024CV000644    Document 2    Filed 06-21-2024    Page 25 of 41

This copy was created by eOriginal SmartSign®Web on Mar 11, 2022 03:40:40 PM EST.

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Wisconsin apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by the Wisconsin Consumer Act.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** If a check, draft, or order presented to us for payment or any electronic payment you make is returned unpaid, you will pay a service charge of $15.00.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and to the limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund of unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund of unearned charges and apply it to what you owe under this Contract.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Default and Required Repayment in Full.** You will be in default if:

- An amount exceeding one full payment is outstanding and remains unpaid for more than 10 days after the due date;
- You fail to pay the first or last payment under this Contract within 40 days after its due date;
- You fail to observe any other agreement in this Contract, a breach of which materially impairs our right to any collateral securing this Contract or materially impairs your ability to pay amounts due under this Contract; or
- You have made a material false statement in your credit application for this Contract.

If you default, subject to any right to notice or cure you may have, we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Our other remedies upon your default depend on whether the transaction is subject to the Wisconsin Consumer Act. If the transaction is not subject to the Wisconsin Consumer Act, we may take (repossess) the Vehicle upon your default without initiating a court proceeding as long as we do so peacefully. If the Wisconsin Consumer Act applies, we may not repossess the Vehicle unless we have first given you notice of your default and, if applicable, the right to cure the default. Also, if the Wisconsin Consumer Act applies we may not repossess the Vehicle without a court proceeding unless:

- You have voluntarily surrendered the Vehicle;
- The Vehicle has been abandoned; or
- We have given you notice required by law and you have not, within the time provided, complained in writing that we proceed in court.

Generally, the Wisconsin Consumer Act applies if the extension of credit is for personal, family or household purposes and the Amount Financed, as shown on Page 1 of this Contract, is $25,000 or less. However, conduct, action, or proceedings to repossess collateral located outside the State of Wisconsin are not subject to the Wisconsin Consumer Act unless you are a Wisconsin resident who has removed the Vehicle from the State of Wisconsin for purposes of transportation, use in your employment, or for temporary periods that do not exceed 15 days.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it as the law allows.

**Sale of the Repossessed Vehicle.** All accessories, equipment, or replacement parts will remain with the Vehicle following repossession. We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. The following expenses, if reasonable and bona fide, are allowed:

- Expenses of taking and holding the Vehicle if paid to persons not related to us;
- Travel and transportation expenses; and
- Expenses for cleaning, restoring, or repairing the Vehicle, to the extent allowed by law.

If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance unless the Wisconsin Consumer Act applies and the amount owed under this Contract at the time of your default was $1,000 or less.

**Collection Costs.** If the transaction is not subject to the Wisconsin Consumer Act and we refer this Contract for collection or enforcement to an attorney who is not our salaried employee, you agree to pay our reasonable attorney fees, plus court costs.

**Application of Payments and Partial Prepayments.** We may apply each payment to the earned and unpaid part of the Finance Charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Communications.** You agree that we may monitor and record telephone calls regarding this Contract. You expressly consent that we may contact you (by calls, emails, text messages or other electronic messages) for any purpose related to this Contract by any means, including but not limited to the use of prerecorded/artificial voice messages or automatic telephone dialing devices. Your express consent applies to any email addresses or telephone numbers we obtain or you provide in any manner and at any time, including email addresses or cellular telephone numbers for which you may incur voice, data or other charges.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials    *A*      Co-Buyer's Initials    *gk*

RIC9049
Rev. Date 05/20

## RETAIL INSTALLMENT CONTRACT
Other Important Agreements

### ARBITRATION PROVISION



03/11/2022 02:23 PM
CMS Tracking #: 4043276    Receipt #: 0

This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

For purposes of this Arbitration Provision, references to "we", "us" and "our" mean the Seller, including its respective subsidiaries, affiliates, agents, employees and officers, or anyone to whom the Seller transfers its rights under the Contract.
**IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

a. What Claims are Covered. A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, the Vehicle and related goods and services that are the subject of the purchase and this Contract, or the collection or servicing of this Contract, including but not limited to:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract, subject to paragraph (f) of this Arbitration Provision.

b. Commencing Arbitration. Either you or we may require any Claim to be arbitrated by first sending to the other party, by certified mail, a written notice of dispute ("Notice"). This Notice shall (1) describe the nature and basis of the Claim and (2) set forth the specific relief sought. If we do not reach an agreement to resolve the Claim within 30 days after the Notice is received, you or we may commence an arbitration proceeding.

Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules and procedures of the arbitration Administrator. Arbitration is not mandatory for an individual Claim that you or we may choose to bring in small claims court or the state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, you or we then may choose arbitration.

c. Choosing the Administrator. If you initiate the arbitration proceeding, you may choose either of the following arbitration Administrators: (1) American Arbitration Association, 120 Broadway, New York, NY 10271, www.adr.org, (800) 778-7879 or (2) JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com, (800) 352-5267. The Administrator you choose will have rules that apply to the proceeding. Important information regarding the arbitration process and more complete information regarding arbitration procedures may be found at either Administrator's website. If the Administrator you choose is unable or unwilling or ceases to serve as the Administrator, you or we may choose the other Administrator. If both Administrators are unable or unwilling or cease to serve as the Administrator, you or we may choose another Administrator, subject to the other's approval. In all cases, any arbitrator must be a lawyer or a retired judge with at least 10 years of legal experience. If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose one for you. No matter which Administrator is chosen, you shall have the right to be represented by an attorney of your own choosing, subject to any limitations in the Administrator's rules.

d. Choosing the Location. Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

e. Paying for Arbitration. Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures or standards provide otherwise.

f. Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim. Further, unless both you and we agree otherwise, the arbitrator may not consolidate more than one person's Claim or Claims. Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

g. Right to Discovery. The parties shall have the right to discovery of non-privileged information and documents relevant to the Claim, subject to the rules and procedures of the Administrator.

h. Arbitration Result and Right of Appeal. Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. Any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal, unless applicable law or the Administrator's rules provide otherwise. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

i. Governing Law. This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all individual remedies permitted by the substantive law that would apply if the action were pending in court.

j. Rules of Interpretation. This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _____     Co-Buyer's Initials _____

RIC9049
Rev. Date 05/20

## RETAIL INSTALLMENT CONTRACT
Other Important Agreements

## NO LIABILITY INSURANCE INCLUDED
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

YOUR INSURANCE INFORMATION
LIENHOLDER/LOSS-PAYEE CarMax Business Services, LLC          INSURED'S NAME ROMAN J HAACK
PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00          COLLISION $ 500.00
INSURANCE COMPANY AMERICAN FAMILY INSURANCE
POLICY NUMBER 09082352017EFPPAWI          EFFECTIVE DATE 11/20/2021          EXPIRATION DATE 05/20/2022
INSURANCE AGENT NAME DAVID ANDERSON          TELEPHONE NUMBER (262) 694-8700

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

The following Buyers Guide notice applies in the case of a used motor vehicle purchase only and is required by law.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.
### NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### VEHICLE RETURN POLICY
You may return the Vehicle to CarMax for a refund within 7 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

### ENTIRE AGREEMENT
This Contract contains the entire agreement between you and us relating to this Contract. Any change to this Contract must be in writing and signed by us. No oral modifications to this Contract are binding.

### ELECTRONIC DISCLOSURE
☒ If checked, you agree to use electronic records and electronic signatures to document this Contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may electronically copy or transfer our authoritative copy of this Contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing on paper copy marked "Original." This paper original will have your electronic signature on it, it will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local laws and regulations.

### FOR MARRIED WISCONSIN RESIDENTS
YOU RECOGNIZE THAT THIS DEBT IS INCURRED AS A FAMILY OBLIGATION UNDER WISCONSIN LAW AND THAT YOUR MARITAL PROPERTY MAY BE SUBJECT TO LIABILITY UNDER THIS OBLIGATION. YOU HAVE NOT ENTERED INTO A MARITAL PROPERTY AGREEMENT, EXECUTED A UNILATERAL STATEMENT, AND YOU ARE NOT AWARE OF ANY COURT DECREE WHICH ADVERSELY AFFECTS OUR INTEREST IN THE CONTRACT. YOU UNDERSTAND THAT WISCONSIN LAW REQUIRES THAT YOUR SPOUSE BE GIVEN NOTICE OF THIS OBLIGATION.

Buyer's Signature: _____          Co-Buyer's Signature: _____

Marital Information. You are ☐married ☐unmarried ☐legally separated.     Marital Information. You are ☐married ☐unmarried ☐legally separated.
If you are married or separated and your spouse is not signing this     If you are married or separated and your spouse is not signing this
Contract, the name of your spouse is _____     Contract, the name of your spouse is _____

Your spouse resides at: ☐ Your address shown on Page 1 or     Your spouse resides at:     Your address shown on Page 1 or
☐ _____

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.

### NOTICE TO CUSTOMER
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Seller: CarMax Auto Superstores, Inc.          Buyer's Signature _____

By _____          Co-Buyer's Signature _____

### ASSIGNMENT
Seller hereby sells, assigns and transfers to CarMax Business Services, LLC d/b/a CarMax Auto Finance          (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor     Nicholas Bailey

Date  03/11/2022          Title  Sales Consultant

RIC9049
Rev. Date 05/20

**Print Report**





# Your AutoCheck Vehicle History Report

Report run: 03/11/2022 14:43:05 EST

### 2016 Chevrolet Silverado 1500 LT / LT Z71

Extended Cab 4D (5.3L V8 DI)

| | |
|---|---|
| **VIN:** | 1GCVKREC3GZ424849 |
| **Class:** | Pickup - Fullsize |
| **Country of Assembly:** | United States |
| **Vehicle Age:** | 6 year(s) |

### This vehicle is eligible for Buyback Protection



Due to the vehicle's history showing no reported major state title brands. **View terms and conditions and to register your vehicle.**

## YOUR VEHICLE AT A GLANCE

### Report sections
Click a section to learn more

✅ No State Title Brand Reported

✅ No Accident Reported
*No Air Bag Deployed*

✅ No Other Damage Reported

🔴 Other Title Brand or Specific Event Reported

Specific Event Reported



⊘ No Odometer Problem(s) Reported
*Last Odometer Reading:1,000*

🛈 Open Recall(s) Reported (1)

## Number of Owners

**ONE OWNER**

**Calculated Owners: 1**

## Owner History



### Current Owner

Purchased: 2016
Where: IL
Owned from: 12/06/2016 - Present



**5 year(s) 3 month(s)**

## Vehicle Usage

 **Vehicle Use: There is indication of the below usage(s) for this vehicle**

**Personal** | Fleet | Rental | Lease | Taxi | Livery | Police | Government | Drivers Ed | Commercial



## Major State Title Brand Check

**Your Vehicle Checks Out:** No major state title brand has been reported by the state Division of Motor Vehicles (DMV). Your vehicle is qualified for the AutoCheck Buyback Protection Program. **Terms and conditions. Register here.**



**0 Problem(s) Reported**     **Major State Title Areas Checked**

No fire brand

No hail brand

No flood brand

No junk or scrapped brand

No manufacturer buyback

No lemon brand

No salvage brand

No rebuilt or rebuildable brand

No odometer brand (EML or NAM)



## Accident Check



**Your Vehicle Checks Out:** AutoCheck has not received any accident records from government sources and independent


NO ACCIDENT FOUND ON RECORD

agencies on this vehicle. Not all accidents are reported to AutoCheck.



 **Damage Check**

Your Vehicle Checks Out: AutoCheck has not received a damage-related event from an auction or an independent source. Not all damage events are reported to AutoCheck. It is recommended to have pre-owned vehicles inspected by a third party prior to purchase.



**0 Problem(s) Reported**    **Other Problem Areas Checked**

| | |
|---|---|
| ✓ | No non-title fire damaged record |
| ✓ | No non-title hail damaged record |
| ✓ | No non-title flood damaged record |
| ✓ | No auction junk or scrapped record |
| ✓ | No auction rebuilt or rebuildable record |
| ✓ | No salvage auction record |
| ✓ | No damaged or major damage incident record |
| ✓ | No structural damage or structural alteration record |
| ✓ | No recycling facility record |
| ✓ | No crash test record |



 **Other Title Brand And Specific Event Check**



**Information Reported:** One or more non-major state title brand(s) and/or additional significant event(s) has been reported to AutoCheck. It is recommended to have pre-owned vehicles inspected by a third party prior to purchase.

| 1 Event(s) Reported | Vehicle Events Checked |
|---|---|
| ✓ | No Insurance Loss record |
| ✓ | No Titled to an insurance company record |
| ✓ | No Auction Lemon/Manufacturer Buyback record |
| ✓ | No abandoned title record |
| ✓ | No grey market title record |
| ⬤ | Loan/Lien record(s) |
| ✓ | No repossessed record |
| ✓ | No corrected title record |
| ✓ | No duplicate title record |
| ✓ | No theft record(s) |



## Odometer Check



**Your Vehicle Checks Out:** No odometer brands, rollbacks, rollover or tampering has been reported to AutoCheck from state Division of Motor Vehicles (DMV) or auction sources. AutoCheck also examined the sequence of reported odometer readings to determine if there are any potential discrepancies.

✓ **State title odometer check**

✓ **Auction odometer check**

✓ **Odometer calculation check**

| 0 Problem(s) Reported | Mileage | Date Reported | Other |
|:---:|:---:|:---:|:---:|
| ✅ | 75 | 12/08/2016 | |
| ✅ | 1,000 | 11/14/2020 | |

⬆

##  Open Recall Check

**Information Reported:** AutoCheck found **1** recalls. It is recommended that this vehicle be taken to the nearest dealer to have the recalled components replaced or fixed. Service bulletins if available are not part of open recalls and can be found in the vehicle history details.

| Recall Date | Recall Type | Mfr. Recall No. | Campaign Description |
|---|---|---|---|
| 09/06/2019 | Safety | N192268490 | Safety: INCREASED BRAKE PEDAL EFFORT |

**MORE INFORMATION** including remedy or risk factors.

LOCATE YOUR NEAREST AUTHORIZED **CHEVROLET DEALER** TO SCHEDULE REPAIR.



## Detailed Vehicle History

Below are the historical events for this vehicle listed in chronological order. Any discrepancies will be in bold text.

**Report Run Date:** 03/11/2022 14:43:05 EST

**Vehicle:** 2016 Chevrolet Silverado 1500 LT / LT Z71 (1GCVKREC3GZ424849)

| Event Date | Location | Odometer Reading | Data Source | Details |
|---|---|---|---|---|
| 10/25/2016 | IL | | Dealer Record | VEHICLE IN DEALER INVENTORY |
| 12/06/2016 | CHICAGO, | | Motor Vehicle | REGISTRATION |

| | IL | | Dept. | EVENT/RENEWAL |
|---|---|---|---|---|
| 12/08/2016 | CHICAGO, IL | 75 | Motor Vehicle Dept. | TITLE(Title #:163436957690) (Lien Reported) |
| 11/28/2017 | CHICAGO, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL |
| 11/29/2018 | CHICAGO, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL |
| 11/18/2019 | CHICAGO, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL |
| 11/14/2020 | CHICAGO, IL | 1,000 | Independent Emission Source | PASSED EMISSION INSPECTION |
| 12/02/2020 | CHICAGO, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL |
| 11/20/2021 | CHICAGO, IL | | Motor Vehicle Dept. | REGISTRATION EVENT/RENEWAL |

⊕

## This Vehicle's Glossary

Below are the specific definitions for events that appear in this vehicle's report. More information is available in the full **AutoCheck glossary.**

| Term | Section Location | Definition |
|---|---|---|
| Loan/Lien | Other Title Brand and Specific Event Check | A loan/lien is the legal right to take and hold or sell the vehicle of a debtor as security or payment for a debt. Normally, a vehicle will have a lien due to a loan or unpaid repair bill against the vehicle. Check with the seller to ensure that the lien has been satisfied. |
| Personal Use | Vehicle Use | This vehicle was driven for personal use. |
| Open Recall | History Section | A recall is considered 'open' for a vehicle when it has not received the required service to correct |

has not received the required service to correct the identified recall. The vehicle will need to be taken to a repair center that has been authorized by the manufacturer to correct any open recall conditions.

| | | |
|---|---|---|
| Recall | History Section | A safety, emission or bulletin issued by the vehicle manufacturer, the Environmental Protection Agency (EPA) or the Department of Transportation (DOT). These are different than a service bulletin. A recall involves work that must be done at no charge to the consumer by an authorized dealer of the vehicle make involved. |



**AutoCheck Terms and Conditions**
This report, and any reliance upon it, is subject to AutoCheck Terms and Conditions. If you obtained the report from a lender/dealer, the lender/dealer has been provided with these Terms and Conditions and can share them with you. These AutoCheck Terms and Conditions are also available at any time at www.autocheck.com/terms or by writing to Experian: Experian Automotive C/O AutoCheck Customer Service 955 American Lane Schaumburg, IL 60173.

**Buyback Protection Terms and Conditions**
This vehicle (1GCVKREC3GZ424849) qualifies for AutoCheck Buyback Protection. If you obtained the report from a dealer, the dealer has been provided with the terms and can share them with you. These Buyback Protection Terms and Conditions are also available to you at any time at www.autocheck.com/bbpterms or by writing to Experian: Experian Automotive C/O AutoCheckCustomer Service 955 American Lane Schaumburg, IL 60173.

**About AutoCheck**
AutoCheck vehicle history reports by Experian Automotive is the leading vehicle history reporting service. With expert data handling, the Experian Automotive database houses over 4 billion records on a half a billion vehicles. Every AutoCheck vehicle history report will give you confidence when buying or selling your next used vehicle, with superior customer service every step of the way.

**Patent Notice**
Certain aspects of this vehicle history report may be covered by U.S. Patent 8,005,759.

Display CARFAX in online listings: ☐



This report provided free of charge by:

**Affiliated Auto LLC**

4503 75th St
Kenosha, WI 53142

818-481-8635

 **History-Based Value Report**

## History events affecting this vehicle's value



| Personal Vehicle | Airbag Deployed | Open Recall |

## $28,720 Retail Value

 **Vehicle History Report™**          US $44.99

**2016 CHEVROLET SILVERADO 1500 LT**

VIN: 1GCVKREC3GZ424849
4 DOOR EXTENDED CAB PICKUP
5.3L V8 F OHV 16V GASOLINE
REAR WHEEL DRIVE W/ 4X4

This CARFAX Report Provided by:
**Affiliated Auto LLC**

 Damage reported: airbag deployed

**2** Service history records

At least 1 open recall

**2** Previous owners

Personal vehicle

**39,223** Last reported odometer reading

This CARFAX Vehicle History Report is based only on information supplied to CARFAX and available as of 11/17/23 at 1:43:31 PM (CST). Other information about this vehicle, including problems, may not have been reported to CARFAX.

Use this report as one important tool, along with a vehicle inspection and test drive, to make a better decision about your next used car.

## C A R F A x  Ownership History
The number of owners is estimated

|  | Owner 1 | Owner 2 |
|---|---|---|
| Year purchased | 2016 | 2022 |
| Type of owner | Personal | Personal |
| Estimated length of ownership | 5 yrs. 3 mo. | 1 yr. 8 mo. |
| Owned in the following states/provinces | Illinois | Wisconsin |
| Estimated miles driven per year | 249/yr | — |
| Last reported odometer reading | 1,000 | 39,223 |

## C A R F A x  Title History
CARFAX guarantees the information in this section

|  | Owner 1 | Owner 2 |
|---|---|---|
| **Damage Brands** <br> Salvage \| Junk \| Rebuilt \| Fire \| Flood \| Hail \| Lemon | ☑ Guaranteed No Problem | ☑ Guaranteed No Problem |
| **Odometer Brands** <br> Not Actual Mileage \| Exceeds Mechanical Limits | ☑ Guaranteed No Problem | ☑ Guaranteed No Problem |



**GUARANTEED** - None of these title problems were reported by a U.S. state Department of Motor Vehicles (DMV). If you find that any of these title problems were reported by a DMV and not included in this report, you may qualify.
View Terms | View Certificate

## C A R F A x  Additional History
Not all accidents / issues are reported to CARFAX.

|  | Owner 1 | Owner 2 |
|---|---|---|
| **Total Loss** <br> No total loss reported to CARFAX. | ☑ No Issues Reported | ☑ No Issues Reported |
| **Structural Damage** <br> CARFAX recommends that you have this vehicle inspected by a collision repair specialist. | ☑ No Issues Reported | ☑ No Issues Reported |
| **Airbag Deployment** <br> Airbag deployment reported: 12/03/2019. | Airbag Deployment | No New Issues Reported |
| **Odometer Check** <br> No indication of an odometer rollback. | ☑ No Issues Indicated | ☑ No Issues Indicated |
| **Accident / Damage** <br> Damage reported: 12/03/2019. | Damage Reported | No New Issues Reported |
| **Manufacturer Recall** | Recall Reported | No New Recalls Reported |

At least 1 manufacturer recall requires service. Check for open recalls or schedule dealer service on GM vehicles at recalls.gm.com.

**Basic Warranty**
Original warranty estimated to have expired.               **Warranty Expired**        **Warranty Expired**

## C A R F A X    **Detailed History**

| 🚗 | **Owner 1** Purchased: 2016 | | **Personal Vehicle** 249 mi/yr |

| Date | Mileage | Source | Comments |
|------|---------|--------|----------|
| 09/12/2016 | 10 | Zeigler Chevrolet Schaumburg Schaumburg, IL 847-882-2200 zeiglerchevroletschaumburg.com **4.1 / 5.0** 94 Verified Reviews 💎 **150** Customer Favorites | **Vehicle offered for sale** |
| 11/07/2016 | | Advantage Chevrolet Hodgkins, IL 708-352-2400 advantagechev.com **4.4 / 5.0** 363 Verified Reviews 💎 **9,473** Customer Favorites | **Vehicle offered for sale** |
| 11/12/2016 | 75 | Advantage Chevrolet Hodgkins, IL 708-352-2400 advantagechev.com **4.4 / 5.0** 363 Verified Reviews 💎 **9,473** Customer Favorites | **Vehicle sold** |
| 11/12/2016 | | Illinois Motor Vehicle Dept. | **Vehicle purchase reported** - Titled or registered as personal vehicle |
| 12/08/2016 | | Illinois Motor Vehicle Dept. Chicago, IL Title #163436957690 | **Title issued or updated** - Registration issued or renewed - First owner reported - Loan or lien reported - Vehicle color noted as Blue |

| 12/29/2016 | 630 | Advantage Chevrolet<br>Hodgkins, IL<br>708-352-2400<br>advantagechev.com<br>**4.4 / 5.0**<br>363 Verified Reviews<br>🏆 9,473 Customer<br>Favorites | **Vehicle serviced**<br>- Maintenance inspection completed<br>- Remote(s) programmed |

| 11/28/2017 | | Illinois<br>Motor Vehicle Dept.<br>Chicago, IL | **Registration issued or renewed** |

| 11/29/2018 | | Illinois<br>Motor Vehicle Dept.<br>Chicago, IL | **Registration issued or renewed**<br>- Correction to record |

| 09/06/2019 | | General Motors | **Manufacturer Safety recall issued**<br>- NHTSA #19V645<br>- Transport Canada# tbd<br>- Recall #N192268490 INCREASED<br>  BRAKE PEDAL EFFORT<br>- Status: Remedy Available |

Locate an authorized General Motors dealer to obtain more information about this recall.

⊖  **Learn more about this recall**

**Description:** General Motors has decided that a defect which relates to motor vehicle safety exists in certain 2014-2018 model year Cadillac Escalade, Chevrolet Silverado, Chevrolet Suburban, Chevrolet Tahoe, GMC Sierra, and GMC Yukon vehicles. In some circumstances, these vehicle may have a condition in which the engine-mounted mechanical vacuum pump output may decrease over time, decreasing the amount of vacuum/power brake assist.

**Remedy:** Dealers will reprogram the electronic brake control module with a new calibration that will improve how the system utilizes the hydraulic brake boost assist function when vacuum assist is depleted.

| 11/18/2019 | | Illinois<br>Motor Vehicle Dept.<br>Chicago, IL | **Registration issued or renewed** |

| 12/03/2019 | | Damage Report | **Damage reported: moderate damage**<br>- Damage to front<br>- Damage to left front<br>- Airbag deployed<br>CARFAX Airbag Tips |

**Damage Severity Scale**





| MINOR | MODERATE | SEVERE |

**Damage Location**

FRONT



LEFT          RIGHT

REAR

## CARFAX HAS THE MOST ACCIDENT & DAMAGE INFORMATION

| 11/14/2020 | 1,000 | Illinois Inspection Station Chicago, IL | **Passed emissions inspection** |
| 12/02/2020 | | Illinois Motor Vehicle Dept. Chicago, IL | **Registration issued or renewed** |
| 11/20/2021 | | Illinois Motor Vehicle Dept. Chicago, IL | **Registration issued or renewed** |

**Owner 2**
Purchased: 2022                                          Personal Vehicle

| Date | Mileage | Source | Comments |
|------|---------|--------|----------|
| 03/11/2022 | 39,223 | Wisconsin Motor Vehicle Dept. Montello, WI | **Odometer reading reported** |
| 03/18/2022 | | Wisconsin Motor Vehicle Dept. Montello, WI | **Registration issued or renewed** - Vehicle color noted as Blue |
| 03/18/2022 | | Wisconsin Motor Vehicle Dept. Montello, WI Title #22077C4300087 | **Title issued or updated** - New owner reported - Loan or lien reported - Vehicle color noted as Blue |

| 05/10/2022 | Car Corral<br>Kenosha, WI<br>262-654-9000<br>30thavenuecarcorral.com<br>**4.0 / 5.0**<br>9 Verified Reviews | **Vehicle serviced**<br>- Lift kit installed<br>- Tire pressure sensor replaced |
| --- | --- | --- |
| 02/07/2023 | Wisconsin<br>Inspection Station | **Passed emissions inspection** |
| 02/08/2023 | Wisconsin<br>Motor Vehicle Dept.<br>Kenosha, WI | **Registration issued or renewed**<br>- Registration updated when owner<br>  moved the vehicle to a new location<br>- Vehicle color noted as Blue |
| 11/17/2023 | OnStar | **Vehicle equipped with OnStar**<br><br>Get 3 free months of premium OnStar<br>with Automatic Crash Response,<br>Roadside Assistance and Remote Door<br>Unlock by pressing the blue OnStar<br>button Learn more |

Have Questions? Consumers, please visit our Help Center at www.carfax.com. Dealers or
Subscribers, please visit our Help Center at www.carfaxonline.com.

# CARFAX Glossary

**Airbag Deployment**
Occurs when the driver, passenger or side airbag has been used or deployed during a crash or other incident. If an airbag has been deployed, it must be replaced by a qualified technician. Have this car inspected by a mechanic prior to purchase.

**Damage Indicator**
Damage can be a result of many different types of events. Examples include contact with objects (other cars, trees, traffic signs, road debris, etc), vandalism, or weather-related events. Not every damage event is reported to CARFAX. As details about the damage event become available, those additional details are added to the CARFAX Vehicle History Report. CARFAX recommends that you have this vehicle inspected by a qualified mechanic.

- This CARFAX Vehicle History Report is based only on information supplied to CARFAX and available as of 11/17/23 at 1:43:31 PM (CST). Other information about this vehicle, including problems, may not have been reported to CARFAX. Use this report as one important tool, along with a vehicle inspection and test drive, to make a better decision about your next used car.

**Damage Severity**
Damage events result in one of the following severity levels:

- Minor: Generally, minor damage is cosmetic (including dents or scratches), may only require reconditioning, and typically does not compromise a vehicle's operation and/or safety.
- Moderate: Moderate damage may affect multiple components of the vehicle and may impair the vehicle's operation and/or safety.
- Severe: Severe damage usually affects multiple components of the vehicle and is likely to compromise the vehicle's operation and/or safety.

CARFAX recommends getting a pre-purchase inspection at a certified collision repair facility.

**First Owner**
When the first owner(s) obtains a title from a Department of Motor Vehicles as proof of ownership.